### United States District Court
### District of Minnesota

| | |
|---|---|
| Nancy Gilpin, | Court file no. _____ |
| Plaintiff, | |
| v. | **Complaint** |
| FMS Investment Corp., Ron Smith, Bryan Thompson, Robert Wallace, Mr. Rizzo, Maria Kalantzis, Jim Kelley, Dearrl Morris, Andrew Cheetham, and Does 1-10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### Jurisdiction

1. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") and out of the invasions of Plaintiff's personal privacy by these Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiff.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Venue is proper because the acts and transactions occurred in Minnesota, Plaintiff resides in Minnesota, and Defendants transact business in Minnesota.

## Parties

4.  Plaintiff Nancy Gilpin is a natural person who resides in the city of Circle Pines, County of Anoka, State of Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5.  Defendant FMS Investment Corp. (hereinafter "Defendant FMS") is a foreign corporation and a collection agency operating from an address of 1000 East Woodfield Road, Suite 102, Schaumburg, Illinois 60173, and FMS's registered agent in Minnesota is CT Corporation System, Inc., 100 South Fifth Street #1075, Minneapolis, MN 55402, and Defendant FMS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities..

6.  Defendant Ron Smith is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

7.  Defendant Bryan Thompson is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

8.  Defendant Robert Wallace is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.  Defendant Mr. Rizzo is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

10. Defendant Maria Kalantzis is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of

the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

11.    Defendant Jim Kelley is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

12.    Defendant Dearrl Morris is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

13.    Defendant Andrew Cheetham is a natural person that is employed at all relevant times by Defendant FMS as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of

the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

14. Defendants Does 1-10 are natural persons who were employed at all relevant times by Defendant FMS as collection agents and are each a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program (FFEL), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities.

## Factual Allegations

15. In or around 1988, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, federally guaranteed student loans originated under the Supplemental Loans for Students (Federal SLS) and Stafford Loan (Stafford) programs with in the approximate combined amount of $23,000 which were used by Plaintiff to attend higher education institutions.

16. Thereafter, these loans became part of the Federal Family Education Loan Program (FFEL) under 34 C.F.R. § 682.100(a)(1)-(2) and subject to the protections therein.

17.   Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff.

18.   Plaintiff has never directly given Defendants prior consent to communicate, in connection with the collection of any debt, with any person other than herself.

19.   Upon information and belief, Defendants have never had express permission of a court of competent jurisdiction to communicate with third parties in connection with the collection of any debt

20.   Upon information and belief, Defendants have never secured a judgment against Plaintiff.

**21.**   Upon information and believe Defendants have never obtained a postjudgment judicial remedy in connection with this debt.

### *Plaintiff Suffers Congestive Heart Failure and Drops Out of School in 1989*

22.   Beginning in 1988, Plaintiff attended the Stenotype Institute of Jacksonville Beach to pursue a degree in court reporting.

23.   In 1989, Plaintiff suffered congestive heart failure and had to drop out of school as a result.

24.   After successful surgery in 1990, Plaintiff undertook an arduous physical and emotional recovery from her serious condition.

Page 6 of 43

25. Because of the immense medical bills related to her life-saving surgery, Plaintiff filed bankruptcy in 1992.

26. Plaintiff listed all of her student loans in her bankruptcy petition.

27. Plaintiff believed that her student loans were dischargeable because of a medical hardship provision.

28. In 1992, Plaintiff's bankruptcy petition was discharged, and Plaintiff believed her student loans had been discharged.

**29.** Despite the bankruptcy discharge, Plaintiff continued to suffer severe economic difficulties.

### *Plaintiff is Contacted by a Debt Collector in 1997*

30. In or around March of 1997, Plaintiff was contacted for the first time by a collection agency regarding her student loans.

31. Plaintiff was shocked, confused, and bewildered, as she thought her student loans had been discharged in bankruptcy.

32. The debt collector informed Plaintiff that with penalties and interest, her student loans were now over $70,000.

33. The collector informed Plaintiff that she could either setup a payment plan, otherwise she would be garnished.

34.    Plaintiff then arranged a payment plan that exceeded her financial means, but did so in order to avoid garnishment.

35.    Within two months, Plaintiff was contacted by her employer's human resources department and informed that her paycheck would be garnished.

36.    Shocked at the turn of events, Plaintiff contacted the student loan administration and was informed the loans had been returned to them by the collection agency.

37.    Plaintiff was informed the minimum payment needed to be $700 a month, or Plaintiff would be garnished.

38.    Plaintiff was unable to pay $700 a month and resigned herself to future garnishment.

39.    Plaintiff was informed that she would be garnished at the maximum allowable amount, but that amount would only cover a little bit of the interest.

40.    At that point, Plaintiff believed she would be garnished for the rest of her life, she would not be able to retire, and she could not marry because her spouse would become liable on the debt.

41.     Once the garnishment started, it was automatically deducted from Plaintiff's paycheck and became a source of constant stress and embarrassment.

42.     After years of garnishment, Plaintiff contacted the Department of Education to discuss her student loans in November 2011.

43.     The original balance of Plaintiff's loans was approximately $23,000.

44.     Plaintiff wanted to know how much she paid towards her loans through the garnishment.

45.     Plaintiff was informed that over fifteen years of garnishment had resulted in payments in excess of $41,000.

**46.**     Plaintiff was informed that she still owed $29,000.

### *Defendant Smith Contacts Plaintiff's Manager in December 2011*

47.     On or about December 6, 2011, Defendant Smith contacted Plaintiff's manager at her place of employment by telephone in an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

48.  Plaintiff learned of Defendant Smith's call when she received an e-mail from her manager stating that Defendant Smith had called and requested that Plaintiff contact him immediately.

49.  Because of her prior experience with debt collectors, Plaintiff immediately believed Defendant Smith was a debt collector.

50.  Prior to this point, Plaintiff had been the subject of administrative wage garnishment for approximately fifteen years.

51.  Defendant Smith had no permissible purpose to contact Plaintiff's workplace.

**52.**  This call to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692e, 1692e(10), and 1692f, among others.

### *Defendant Smith Harasses Plaintiff on December 6, 2011*

53.  After receiving the above-described e-mail on December 6, 2011, Plaintiff called Defendant Smith and this call became an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

54.     During the call, Plaintiff told Defendant Smith not to contact her workplace.

55.     Defendant Smith told Plaintiff that he was calling about a student loan that was in default, or words to that effect.

56.     Defendant Smith informed Plaintiff that the Department of Education had sent the debt to Defendant FMS for collection, or words to that effect.

57.     Plaintiff told Defendant Smith that there must be a mistake, as she was being garnished on the debt and she had just discussed the debt with the Department of Education, or words to that effect.

58.     Defendant Smith told Plaintiff that the debt had been referred to Defendant FMS and it would not do any good to contact the Department of Education, as Defendant FMS had all the paperwork, or words to that effect.

59.     Defendant Smith then provided Plaintiff two repayment options.

60.     Defendant Smith stated that option one required a $7,000 down payment and repayment of the remaining balance over a few months, or words to that effect.

61.    Defendant Smith stated that option two involved rehabilitating the loan by paying $600 down and then $350 a month for nine months, or words to that effect.

62.    This rehabilitation repayment plan was not the nine (9) monthly payments, and in a reasonable and affordable amount as prescribed by 34 C.F.R. § 682.405.

63.    Defendant Smith also explained that option two would bring her loan out of default, or words to that effect.

64.    Plaintiff explained that her financial situation would not allow either payment option, or words to that effect.

65.    Plaintiff then provided a detailed explanation about her finances, including her income and monthly expenses, or words to that effect.

66.    Defendant Smith seemed unmoved by Plaintiff's explanation and told her that they needed to get the payment plan "locked in today" or words to that effect.

67.    Defendant Smith stated he did not know the interest rates for the debt and also explained that the payments would be lower than Plaintiff's garnishment, or words to that effect.

68. Defendant Smith did not tell Plaintiff that any rehabilitation payments would be in addition to, and concurrent with, the administrative wage garnishment that had been in place for over fifteen years.

69. Plaintiff told Defendant Smith that she needed some time to figure it out and needed to discuss with her sister and brother-in-law, or words to that effect.

70. Defendant Smith then suggested they immediately have a conference call with Plaintiff's sister and brother-in-law, or words to that effect.

71. Plaintiff again informed Defendant Smith she needed some additional time, or words to that effect.

72. Defendant Smith then relented and told Plaintiff to call him back by Wednesday, December 7, 2011, to inform him of her decision, or words to that effect.

73. Thereafter the call ended.

74. After the call, Plaintiff felt despair, terrified, angry, nauseated, and anxious, and among other emotional manifestations.

75. At no time did Defendant Smith ever meaningfully discuss Plaintiff's personal expenses, or economic circumstances, in attempting to

determining a reasonable and affordable monthly payment amount to rehabilitate this student loan, and as required by the FFEL, 34 C.F.R. § 682.405.

76. Defendant Smith's mischaracterizing Plaintiff's right to enter into a rehabilitation program pursuant to the FFEL, specifically, 34 C.F.R. § 682.405 et seq., by demanding an arbitrary and capricious amount was an unfair, false, and deceptive act in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

77. Defendant Smith's failure to obtain documentation of Plaintiff current expenses, and other economic circumstances in determining an agreed upon reasonable and affordable minimum monthly repayment amount was a false and deceptive collection practice, as well as unfair to the Plaintiff, and done in violation of numerous and multiple provisions of the FDCPA including but not to limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

**78.** This call to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(10), and 1692f, among others.

### Defendants Smith and Mr. Rizzo Harass Plaintiff on December 7, 2011

79. On December 7, 2011, Defendant Smith contacted Plaintiff by telephone and this call became an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

80. Defendant Smith told Plaintiff that she needed to get her payment arrangement "locked in" and he could not wait, or words to that effect.

81. Defendant Smith then presented the two repayment arrangements from the prior day, or words to that effect.

82. Plaintiff explained that she could not afford either payment option.

83. Defendant Smith then put his supervisor on the phone, Defendant Mr. Rizzo.

84. Defendant Mr. Rizzo spoke in a threatening tone that frightened Plaintiff.

85.   Plaintiff tried to explain to Defendant Mr. Rizzo that she had been garnished for fifteen years and she was confused about what was happening, or words to that effect.

86.   Defendant Mr. Rizzo would cut off Plaintiff and told her "you owe a debt—how are you going to pay it—that's all we need to discuss" or words to that effect.

87.   Plaintiff again reiterated she could not afford either payment option and said she needed more time to figure things out, or words to that effect.

88.   Defendant Mr. Rizzo told Plaintiff that she could have an extension until Friday, or words to that effect.

89.   Plaintiff pleaded for more time with Defendant Mr. Rizzo, stating that she needed more time to discuss the matter with her sister and brother in law, or words to that effect.

90.   Defendant Mr. Rizzo told Plaintiff the latest deadline would be 10:00 a.m. on Saturday, or words to that effect.

91.   Thereafter, the call ended.

92.   At no time did Defendant Mr. Rizzo ever discuss meaningfully Plaintiff's personal expenses, or economic circumstances, in attempting to

determining a reasonable and affordable monthly payment amount to rehabilitate this student loan, and as required by the FFEL, 34 C.F.R. § 682.405.

93.  Defendant Mr. Rizzo's mischaracterizing Plaintiff's right to enter into a rehabilitation program pursuant to the FFEL, specifically, 34 C.F.R. § 682.405 et seq., by demanding an arbitrary and capricious amount was an unfair, false, and deceptive act in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

94.  Defendant Mr. Rizzo's failure to obtain documentation of Plaintiff current expenses, and other economic circumstances in determining an agreed upon reasonable and affordable minimum monthly repayment amount was a false and deceptive collection practice, as well as unfair to the Plaintiff, and done in violation of numerous and multiple provisions of the FDCPA including but not to limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

*95.*  This call to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not

limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692e, 1692e(10), and 1692f, among others.

*Plaintiff Calls the Department of Education on December 9, 2011*

96.   After the harassing phone calls from Defendants, Plaintiff sought emotional support from her sister and brother-in-law in order to decide on a course of action.

97.   On December 9, 2011, Plaintiff met with her sister and brother-in-law to discuss the debt and the communications.

98.   Plaintiff explained the calls were overwhelmingly stressful and causing immense emotional stress.

99.   Plaintiff, along with sister and brother-in-law, decided to call the Department of Education to get more information.

100.  Plaintiff, along with her sister and brother-in-law, spoke with a representative named Tammy Paige, who told them that her loans should never have been transferred from the Department of Education, or words to that effect.

101.  Tammy Paige explained that because of a system changeover, the Department of Education could not get Plaintiff's loans back, or words to that effect.

102.   Tammy Paige explained that to date, Plaintiff had made payments in excess of $41,000, but Plaintiff still had a balance of more than $29,000.

103.   The original balance of Plaintiff's loans were around $23,000.

**104.**   Sometime thereafter, the call ended.

### Defendant Thompson Harasses Plaintiff on December 9, 2011

105.   On or around December 9, 2011, Plaintiff, along with her sister and brother-in-law, called Defendants and this call became an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

106.   Plaintiff and her family members spoke with Defendant Thompson and asked him to verify Defendant Smith's statement that if she agreed to option two, the garnishment would stop.

107.   Defendant Thompson said that wasn't entirely correct, as Plaintiff would need to pay $600 down, $350 per month, and the garnishment would continue, or words to that effect.

108.   Plaintiff felt betrayed and tricked, as this was not what Defendant Smith had told her.

109.   Defendant Thompson then asked Plaintiff if she was expecting a tax refund, if she could borrow money, or if she could get a loan, or words to that effect.

110.   Defendant Thompson told Plaintiff if she could get a loan, they could get a settlement of around $21,000.

111.   Feeling hopeless and boxed into a corner, Plaintiff said she would try and get a loan.

112.   Plaintiff asked Defendant Thompson for the exact settlement amount so that she could discuss a loan with her bank, or words to that effect.

113.   Defendant Thompson told Plaintiff to make the check for $22,000 just to be safe, and to send it to the Department of Education, or words to that effect.

114.   Plaintiff said she would ask about a loan and also asked Defendant Thompson to tell Defendant Smith that she called so that Defendant Smith would not be mad at her.

115.   Thereafter, the call ended.

116.   At no time did Defendant Thompson ever meaningfully discuss Plaintiff's personal expenses, or economic circumstances, in attempting to determining a reasonable and affordable monthly payment amount to rehabilitate this student loan, and as required by the FFEL, 34 C.F.R. § 682.405.

117.   Defendant Thompson's mischaracterizing Plaintiff's right to enter into a rehabilitation program pursuant to the FFEL, specifically, 34 C.F.R. § 682.405 et seq., by demanding an arbitrary and capricious amount was an

unfair, false, and deceptive act in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

118. Defendant Thompson's failure to obtain documentation of Plaintiff current expenses, and other economic circumstances in determining an agreed upon reasonable and affordable minimum monthly repayment amount was a false and deceptive collection practice, as well as unfair to the Plaintiff, and done in violation of numerous and multiple provisions of the FDCPA including but not to limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

**119.** This call to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, among others.

*Defendants Smith and Wallace Harass Plaintiff on December 12, 2011*

120. On or about December 12, 2011 Plaintiff called Defendant Smith and left a voicemail.

121.   Shortly thereafter Defendant Smith returned Plaintiff's call and this call became an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

122.   Defendant Smith stated he had read Plaintiff's file with notes about the settlement offer quoted to her and that she had submitted a loan application, or words to that effect.

123.   Defendant Smith stated that they needed to "lock in" an agreement for rehabilitation or words to that effect.

124.   Plaintiff explained that she could not afford to make additional payments and that she was already being garnished the maximum amount allowable under the law, or words to that effect.

125.   Defendant Smith then transferred the phone to Defendant Wallace.

126.   Plaintiff explained her situation to Defendant Wallace, including the fact the Department of Education had told her this should have never gone to them and was an error in the system changeover, or words to that effect.

127.   Defendant Wallace stated that would not be true, as some loans in garnishment can come up for review and be sent to a new collection agency, or words to that effect.

128. Defendant Wallace then explained that if Plaintiff's loan was refused, her inability to meet the rehabilitation terms would result in her account being noted as "refusal to pay" and her loans could be referred for litigation, or words to that effect.

129. Plaintiff told Defendant Wallace that she would pray that she would get the loan.

130. Defendant Wallace told Plaintiff that he would give her forty-eight hours, or words to that effect.

131. Thereafter, the call ended.

132. Defendants Wallace's statements and threats of litigation, among others, were intended to cause Plaintiff to feel ashamed.

133. After the phone call, Plaintiff felt angry, frustrated, and hopeless about her situation.

**134.** This call to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692e, 1692e(5), 1692e(10), and 1692f, among others.

*Defendant Rizzo Harasses Plaintiff on December 14, 2011*

135.   On or about December 14, 2011, Plaintiff called Defendants and this call became an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

136.   Plaintiff spoke with Defendant Smith and informed him that her loan had been denied.

137.   Plaintiff explained that she wanted to make a voluntary repayment, but she could not afford the terms offered by Defendants.

138.   Plaintiff stated she thought she could afford rehabilitation payments of $100, in addition to what was already being garnished, or words to that effect.

139.   Defendant Smith explained that the Department of Education wanted rehabilitation payments of $240-$250 per month, they would waive the $600 down payment, or words to that effect.

140.   Defendant Smith explained that the Department of Education would not waive the down payment if Plaintiff wanted rehabilitation payments of $100 per month, or words to that effect.

141.   Defendant Smith stated that the garnishment would continue, or words to that effect.

142. Plaintiff pleaded with Defendant Smith and told him she could not afford that payment plan, or words to that effect.

143. Plaintiff also explained that she was worried about future medical bills related to follow up appointments related to her chemotherapy, or words to that effect.

144. Defendant Smith then stated "look at in these terms--it won't be easy, it will be a sacrifice, but you will be better off" or words to that effect.

145. Plaintiff then pleaded with Defendant Smith to ask the Department of Education if $100 rehabilitation payments were acceptable, in addition to her current administrative wage garnishment, or words to that effect.

146. Defendant Smith told Plaintiff that $100 was not acceptable to the Department of Education--Mr. Rizzo had already gotten $250 a month approved--and they would not go any lower, or words to that effect.

147. Defendant Smith then told Plaintiff that fifteen years of garnishment was not a "paying status" because it was involuntary, or words to that effect.

148. Defendant Smith then shamed Plaintiff by asking "if people only paid what they could afford, where would the Department of Education be?" or words to that effect.

149.  Defendant Smith then continued and said they had already been talking to Plaintiff for over a week, they could not allow her any additional time, and that Defendants would not send anything in writing until an agreement was made over the phone, or words to that effect.

150.  Plaintiff explained that she simply could not afford to pay more than what she offered.

151.  Defendant Smith continued shaming Plaintiff by saying she was "asking the Department of Education to take a backseat to her other debts," or words to that effect.

152.  Plaintiff felt ashamed, embarrassed, and angry.

153.  Plaintiff told Defendant Smith that she was trying to paying all of her debts and she had been paying 15% of every paycheck for the last fifteen years towards her loans, or words to that effect.

154.  Defendant Rizzo further explained that "credit cards and other bills cannot garnish you, but we can" or words to that effect.

155.  Defendant Rizzo then transferred Plaintiff to Defendant Kalantzis.

156.  Defendant Kalantzis explained to Plaintiff that they wanted to help, but they cannot negotiate any further, or words to that effect.

157.   Defendant Kalantzis further explained that they have guidelines they needed to follow and they could not deal with individual situations, and they just follow the Department of Education's rules, or words to that effect.

158.   Defendant Kalantzis stated if Plaintiff could not make the minimum of $250, the payments would go higher, or words to that effect.

159.   Defendant Kalantzis stated they would refer Plaintiff's file to pre-administrative garnishment and they could garnish up to 25% of all her income, or words to that effect.

160.   Defendant Kalantzis stated the 25% would go towards new penalties, interest, and the balance would increase, or words to that effect.

161.   Defendant Kalantzis then asked Plaintiff about her 401k and family resources that could contribute, or words to that effect.

162.   Defendant Kalantzis further attempted to harass Plaintiff and suggested she utilize unused balances on credit cards or mortgage to make payments on her loans, or words to that effect.

163.   Plaintiff explained that she had just gone through chemotherapy and has ongoing medical expenses to deal with continuing health issues and could not afford Defendants proposed payment plans.

164.   Defendant Kalantzis dismissed Plaintiff's pleas and gave Plaintiff a deadline of 5 p.m. on December 15, 2011, or words to that effect.

165.   Soon thereafter, the call ended.

166.   At no time did Defendant Smith or Defendant Kalantzis meaningfully discuss Plaintiff's personal expenses, or economic circumstances, in attempting to determining a reasonable and affordable monthly payment amount to rehabilitate this student loan, and as required by the FFEL, 34 C.F.R. § 682.405.

167.   Defendant Smith and Defendant Kalantzis's mischaracterization of Plaintiff's right to enter into a rehabilitation program pursuant to the FFEL, specifically, 34 C.F.R. § 682.405 et seq., by demanding an arbitrary and capricious amount was an unfair, false, and deceptive act in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

168.   Defendant Smith and Defendant Kalantzis's failure to obtain documentation of Plaintiff current expenses, and other economic circumstances in determining an agreed upon reasonable and affordable minimum monthly repayment amount was a false and deceptive collection

practice, as well as unfair to the Plaintiff, and done in violation of numerous and multiple provisions of the FDCPA including but not to limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

169. This call to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692e, 1692e(2), 1692e(4), 1692e(10), and 1692f, among others.

### Defendants Harass Plaintiff on December 19, 2011

170. On or about December 19, 2011, Defendants contacted Plaintiff by telephone and this call became an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

171. Plaintiff had previously informed Defendants, on numerous occasions, not to contact her during the evening, as she was working at that time.

172. Plaintiff's caller id displayed a callback number of (651) 304-6307, which is located in Hastings, Minnesota.

173. Upon information and belief, the above-listed number is in fact Defendant FMS.

174. Plaintiff spoke with Defendant Kelley.

175. Defendant Kelley stated he was calling on behalf of the Department of the Education.

176. Plaintiff stated she could afford rehabilitation payments of $100 in addition to the administrative wage garnishment, or words to that effect.

177. Defendant Kelley stated that "looks like the minimum acceptable payment of rehabilitation is $300" or words to that effect.

178. That amount was contrary to what Defendants Smith and Kalantzis had told Plaintiff during the previous call.

179. Defendant Kelley stated he would refer Plaintiff back to them [FMS] or words to that effect.

180. Plaintiff was confused, as she was unsure who Defendant Kelley actually worked for.

181. Plaintiff was concerned, as the caller id displayed Hastings, Minnesota, and Plaintiff was worried about the close proximity.

182. At no time did Defendant Kelley meaningfully discuss Plaintiff's personal expenses, or economic circumstances, in attempting to determining a reasonable and affordable monthly payment amount to rehabilitate this student loan, and as required by the FFEL, 34 C.F.R. § 682.405.

183.   Defendant Kelley's mischaracterization of Plaintiff's right to enter into a rehabilitation program pursuant to the FFEL, specifically, 34 C.F.R. § 682.405 et seq., by demanding an arbitrary and capricious amount was an unfair, false, and deceptive act in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

184.   Defendant Kelley's failure to obtain documentation of Plaintiff current expenses, and other economic circumstances in determining an agreed upon reasonable and affordable minimum monthly repayment amount was a false and deceptive collection practice, as well as unfair to the Plaintiff, and done in violation of numerous and multiple provisions of the FDCPA including but not to limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

**185.**   This call to Plaintiff's workplace was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692(5), 1692e, 1692e(1), 1692e(2), 1692e(10), and 1692f, among others.

*Defendant Smith Contacts Plaintiff's Employer Again on December 21, 2011*

186.   On or about December 21, 2011, Defendant Smith contacted Plaintiff's supervisor and her workplace in an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

187.   On or about December 21, 2011, Plaintiff received an e-mail from her supervisor, indicating that she needed to contact Defendant Smith immediately.

188.   Plaintiff had previously told Defendants to stop contacting her workplace.

189.   Upon learning of the contact with her employer, Plaintiff felt anger, frustration, upset, betrayed, and fear of the possibility of losing her only source of income amongst other negative emotions.

**190.**   This call to Plaintiff's workplace was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(3), 1692c(a)(1), 1692c(a)(3), 1692d, 1692e, 1692e(10), and 1692f, among others.

*Defendants Mislead Plaintiff on December 22, 2011*

191.   On or about December 21, 2011, Plaintiff spoke with Defendant Thompson and this call became an effort to collect the debt, which was a

"communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

192. Plaintiff told Defendant Thompson not to call her supervisor and not to call her during daytime hours, as she was working, or words to that effect.

193. Plaintiff explained she had previously explained this to Defendant Smith.

194. Defendant Thompson transferred the call to Defendant Moore.

195. Defendant Moore offered to rehabilitate Plaintiff's loan for $218 per month, payable over ten months, or words to that effect.

196. Defendant Moore's statement was in contradiction to previous statements made by Defendants that any rehabilitation payments must be made over nine months.

197. Plaintiff again explained she could not afford the payment options presented and explained the medical expenses related to her chemotherapy and other medical care.

198. Defendant Moore stated that he needed a secured agreement over the phone, or words to that effect.

199. Defendant Moore stated that if Plaintiff agreed to the plan, but could not continue the payments, there would be no additional penalties---the loan would just go back to default, or words to that effect.

200. Plaintiff told Defendant Moore that she had been repeatedly misinformed by Defendants and she was not sure who she could believe, or words to that effect.

201. As an example, Plaintiff told Defendant Moore that she previously told Defendant Smith not to call her at work, but Defendant Smith continued to do so, or words to that effect.

202. Defendant Moore apologized, but stated that as soon they had a secured agreement, the calls would stop, or words to that effect.

203. Plaintiff told Defendant Moore that if she got fired because of Defendant's conduct, there would be nothing to collect, or words to that effect.

204. Defendant Moore told Plaintiff to call back within twenty-four hours with her decision, or words to that effect.

205. Soon thereafter, the call ended.

206. At no time did Defendant Moore ever meaningfully discuss Plaintiff's personal expenses, or economic circumstances, in attempting to

determining a reasonable and affordable monthly payment amount to rehabilitate this student loan, and as required by the FFEL, 34 C.F.R. § 682.405.

207. Defendant Moore's mischaracterizing Plaintiff's right to enter into a rehabilitation program pursuant to the FFEL, specifically, 34 C.F.R. § 682.405 et seq., by demanding an arbitrary and capricious amount was an unfair, false, and deceptive act in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

208. Defendant Moore's failure to obtain documentation of Plaintiff current expenses, and other economic circumstances in determining an agreed upon reasonable and affordable minimum monthly repayment amount was a false and deceptive collection practice, as well as unfair to the Plaintiff, and done in violation of numerous and multiple provisions of the FDCPA including but not to limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, amongst others.

**209.** This call to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692e, 1692e(10), and 1692f, among others.

### Defendants Mislead Plaintiff Again on December 22, 2011

210. On or about December 22, 2011, Plaintiff spoke with Defendant Morris and this call became an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

211. Plaintiff asked Defendant Morris for Defendant FMS's address or fax number.

212. Defendant Morris demanded to know why Plaintiff wanted that information, or words to that effect.

213. Plaintiff stated she needed to send them some information, as she had been dealing with Ron Smith.

214. Defendant Morris stated they all worked for the same person, or words to that effect.

215. Defendant Morris transferred the call to Defendant Cheetham.

216. Defendant Cheetham also demanded to know why Plaintiff wanted Defendant's address.

217. Plaintiff asked if Defendant Cheetham if he was refusing to provide an address or fax number, or words to that effect.

218. Defendant Cheetham told Plaintiff she was being evasive, or words to that effect.

219. Plaintiff explained that she wanted to put in writing that she did not want Defendants contacting her workplace.

220. Defendant Cheetham then finally provided an address and fax number.

221. Thereafter, the call ended.

**222.** This was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692e, 1692e(10), and 1692f, among others.

### *Plaintiff Sends a Cease and Desist Letter on December 22, 2011*

223. Exasperated by Defendants misleading statements and harassment, Plaintiff mailed and faxed a letter to Defendants on December 22, 2011.

224. In the letter, Plaintiff explained she had told Defendant Smith during her first call that Defendants should not contact her workplace.

225. In the letter, Plaintiff explained that Defendant Smith contacted Plaintiff's workplace in spite of Plaintiff's request that he not do so.

*Summary*

226.   All of the above-described collection communications made to Plaintiff by these individual Defendants and other collection employees employed by Defendant FMS, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

227.   Plaintiff has suffered actual damages as a result of Defendants' illegal conduct in the form of anger, anxiety, emotional distress, fear, frustration, humiliation, embarrassment, and crying amongst other negative emotions.

228.   Defendants' illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff.

### Respondeat Superior Liability

229.   The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant FMS who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant FMS.

230.    The acts and omissions by these individual Defendants and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant FMS in collecting consumer debts.

231.    By committing these acts and omissions against Plaintiff, these individual Defendants and these other debt collectors were motivated to benefit their principal, Defendant FMS.

232.    Defendant FMS is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this debt from Plaintiff.

### Trial by Jury

233.    Plaintiff is entitled to and hereby respectfully demand a trial by jury. US Const. Amend. 7; Fed. R. Civ. P. 38.

## Causes of Action

### Count 1:
### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 et seq.

234. Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

235. The foregoing intentional and negligent acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692–1692p.

236. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

### Prayer for Relief

**Wherefore**, Plaintiff prays that judgment be entered against each Defendant for:

**Count 1:**
**Violations of the Fair Debt Collection Practices Act**
**15 U.S.C. §§ 1692 et seq.**

- statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be determined at trial;

- costs of litigation and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

- for such other and further relief as may be just and proper.

**[Signatures Follow]**

Respectfully submitted,

**The Ryder Law Firm, LLC**

Date: November 26, 2012

Randall P. Ryder (#389957)
2701 University Ave SE, #209
Minneapolis, MN 55414

phone • 612.424.3770
fax • 612.605.3247
e-mail • email@theryderlawfirm.com

**Barry, Slade, Wheaton & Helwig, LLC**

s/Christopher S. Wheaton
Christopher S. Wheaton (#389272)
2701 University Ave SE, #209
Minneapolis, MN 55414

phone • 612.379.8800
fax • 612.379.8810
e-mail • cwheaton@lawpoint.com

**Attorneys for Plaintiff**

## Verification of Complaint and Certification

STATE OF MINNESOTA        )

                                   ) ss

COUNTY OF HENNEPIN       )

Pursuant to 28 U.S.C. § 1746, Plaintiff Nancy Gilpin having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

- I am a Plaintiff in this civil proceeding.
- I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
- I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
- I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
- I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ___11/26/12___

_____
Nancy Gilpin